**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BARBARA SVITEK, | ) Case No. |
| | ) |
| Plaintiff, | ) |
| | ) **COMPLAINT FOR** |
| vs. | ) **VIOLATION OF THE** |
| | ) **FEDERAL SECURITIES LAWS** |
| SUPERVALU, INC., DONALD R. CHAPPEL, IRWIN S. COHEN, PHILIP L. FRANCIS, MARK GROSS, ERIC G. JOHNSON, MATHEW M. PENDO, FRANCESCA RUIZ DE LUZURIAGA, FRANK A. SAVAGE, and MARY A. WINSTON, | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

Plaintiff Barbara Svitek ("Plaintiff"), by her undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of SuperValu, Inc., ("SuperValu" or the "Company") brings this action against the Company and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §§ 240.14a-9, 244.100 arising out of the definitive merger agreement between and among SuperValu, United Natural Foods, Inc., and Jedi Merger Sub, Inc. ("Merger Sub", and together with United Natural Foods, Inc., "United") (the "Merger Agreement").

2. On July 25, 2018, the Company and United entered into the Merger Agreement, and issued a joint press release the next day announcing the merger, in which, each share of Company common stock will be converted into the right to receive $32.50 in cash (the "Proposed Transaction"). The Merger represents a total value of approximately $2.9 billion.

3. On August 21, 2018, the Company filed a Form PREM14A Preliminary Proxy Statement (the "Proxy") with the SEC designed to convince SuperValu stockholders to approve the Proposed Transaction. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) the Company's financial projections; (ii) the valuation analyses conducted by the Company's financial advisors, Barclays Capital, Inc. ("Barclays") and Lazard Freres & Co. LLC ("Lazard"), and (iii) the potential conflicts of interest faced by Barclays and Lazard.

4. The special meeting of SuperValu stockholders to vote on the Proposed Transaction is forthcoming (the "Stockholder Vote"). Therefore, it is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to SuperValu's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**PARTIES**

6. Plaintiff is, and has been at all relevant times, a stockholder of SuperValu.

7. SuperValu is a corporation organized and existing under the laws of the State of

Delaware. It maintains its principal executive offices at 11840 Valley View Road, Eden Prairie, Minnesota, 55344. The Company's common stock is listed on the New York Stock Exchange under the ticker symbol "SVU."

8. Defendant Individual Defendant Donald R. Chappel has been a director of the Company since 2010 and has served as Chairman of the Board since 2013.

9. Defendant Irwin S. Cohen has been a director of the Company since 2003.

10. Defendant Philip L. Francis has been a director of the Company since 2006.

11. Defendant Mark Gross has served as the President, Chief Executive Officer ("CEO") and a director of the Company since 2016.

12. Defendant Eric G. Johnson has been a director of the Company since 2013.

13. Defendant Mathew M. Pendo has been a director of the Company since 2014.

14. Defendant Francesca Ruiz de Luzuriaga has been a director of the Company since 2015.

15. Defendant Frank A. Savage has been a director of the Company since 2014.

16. Defendant Mary A. Winston has been a director of the Company since 2016.

17. The Defendants described in ¶ 8 through ¶ 16 are referred to herein as the "Individual Defendants."

18. Collectively, SuperValu and the Individual Defendants are referred herein as "Defendants."

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

20. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because SuperValu is a corporation established under the laws of this District.

**FURTHER SUBSTANTIVE ALLEGATIONS**

22. On July 26, 2018, the Company and United issued a joint press release announcing the Proposed Transaction. The Press Release read in relevant part:

> PROVIDENCE, R.I. and MINNEAPOLIS, July 26, 2018 /PRNewswire/ -- United Natural Foods, Inc. (NASDAQ : UNFI ) and SUPERVALU INC. (NYSE : SVU ) today announced that they have entered into a definitive agreement under which UNFI will acquire SUPERVALU for $32.50 per share in cash, or approximately $2.9 billion, including the assumption of outstanding debt and liabilities.
>
> "This transaction accelerates UNFI's "Build out the Store" growth strategy by immediately enhancing our product range, equipping us to bring an attractive, comprehensive product portfolio to an expanded universe of customers," said Steve Spinner, UNFI's Chief Executive Officer and Chairman. "Combining our leading position in natural and organic foods with SUPERVALU's presence in fast-turning products makes us the partner of choice for a broader range of customers. Together, we can provide our "better for you" products as well as other high-growth segments, improving customers' competitive advantages in a dynamic marketplace. These benefits, plus our increased efficiency and productivity, will enable us to create value for our shareholders, enhance opportunities for our suppliers, provide a broader assortment for our customers and create new prospects for our associates over the long term."
>
> "The combination of UNFI and SUPERVALU provides a substantial premium and delivers certainty of value to our stockholders, meaningful benefits to our customers, expanded opportunities for our employees, and the ability for us and our vendors to efficiently serve a varied customer base," said

Mark Gross, SUPERVALU's Chief Executive Officer. "We have been executing an ambitious strategic transformation for over two years. We believe that this transaction is the best and natural next step for our stockholders, customers and employees. I am very proud of the unwavering commitment and focus of our employees in driving our strategic transformation and serving our customers. I am confident that, together, SUPERVALU and UNFI will be well positioned to succeed – and to help our customers succeed – in today's grocery landscape."

**Compelling Strategic and Financial Benefits**

- **Diversifies customer base**: The transaction will greatly expand UNFI's customer base and exposure across channels, including those where demand for "better for you" products is increasing and UNFI is under-represented. It will also unlock new opportunities through a comprehensive product portfolio.

- **Enables cross-selling opportunities**: UNFI will benefit from its ability to deliver comprehensive and expanded offerings, including the addition of high-growth perimeter categories such as meat and produce to UNFI's natural and organic products.

- **Expands market reach and scale**: The wider geographic reach and greater scale of the combined entity is expected to increase efficiencies and effectiveness. Enhances technology, capacity and systems: The combined entity plans to leverage scalable systems to streamline its processes, more efficiently meet the needs of its customers and reduce future capital expenditures.

- **Delivers significant synergies**: Through this combination, UNFI will be positioned to realize run rate cost synergies of more than $175 million by year 3.

- **Accelerating growth**: After year one, the transaction is projected to be accretive to Adjusted EPS in year 1 with double-digit Adjusted EPS growth after year 1, excluding one-time costs.

**Governance**

UNFI Chief Executive Officer and Chairman Steven Spinner will lead the combined entity. Sean Griffin, UNFI Chief Operating Officer, will lead the SUPERVALU integration efforts, post close and lead an integration committee comprised of executives from both companies to drive the implementation of best practices from each company and the delivery of important synergies and a rapid and smooth integration.

**Transaction Details**

- UNFI expects to finance the transaction substantially with debt and Goldman Sachs provided committed financing in the transaction.

- Over time, UNFI plans to divest SUPERVALU retail assets in a thoughtful and economic manner.

- Upon closing, UNFI's net debt-to-EBITDA ratio is expected to be high. With strong cash flows, proceeds from divestitures and commitment to reducing debt, the company anticipates reducing leverage by at least two full turns in the first three years.

- The transaction has been approved by the boards of directors of both companies and is subject to antitrust approvals, SUPERVALU shareholder approval and other customary closing conditions, and is expected to close in the fourth quarter of calendar year 2018.

**Advisors**

Goldman Sachs and Foros acted as financial advisors, and Skadden, Arps, Slate, Meagher & Flom LLP and Jones Day LLP acted as legal counsel to UNFI. Barclays and Lazard acted as financial advisors and Wachtell Lipton Rosen & Katz LLP acted as legal counsel to SUPERVALU.

**The Proxy Misleads SuperValu Stockholders by Omitting Material Information**

23. On August 21, 2018, the Company filed the materially misleading and incomplete Proxy with the SEC. Designed to convince stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's expected future value as a public entity as evidenced by the Company's financial projections, the financial analyses conducted by Barclays and Lazard, and the potential conflicts of interest faced by Barclays and Lazard in advising the Board..

*Material Omissions Concerning the Company's Financial Projections*

24. The Proxy discloses that the projections of unlevered free cash flow under the Scenario A projections provided by Company management were "calculated by taking adjusted earnings before interest after tax, adding back depreciation and amortization, subtracting capital expenditures, adjusting for changes in working capital, subtracting the cost of company-owned

life insurance, stock-based compensation, merger and integration costs, labor buyout and severance costs (after tax), and adding back proceeds from the divestitures contemplated in the Scenario A projections, capital leases to be assumed by buyers related to such divestitures, and the projected proceeds from the sale of certain distribution centers."

25. Despite this plethora of line items that affected the derivation of unlevered free cash flows from Adjusted EBITDA, the Proxy only discloses the projected values for capital expenditures. The Proxy therefore omits the line items for: (i) changes in working capital, (ii) cost of company-owned life insurance, (iii) stock-based compensation, (iv) merger and integration costs, (v) labor buyout and severance costs (after tax), (vi) proceeds from the divestitures contemplated in the Scenario A projections, (vii) capital leases to be assumed by buyers related to such divestitures, and (viii) the projected proceeds from the sale of certain distribution centers.

26. Providing the non-GAAP metrics of Adjusted EBITDA and unlevered free cash flows without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

27. These projections were provided to the Board, Barclays, and Lazard, and used by Barclays and Lazard for the purpose of creating fairness opinions that could then be used in soliciting stockholder approval of the Proposed Transaction. Because these analyses were presented to the SuperValu stockholders as evidence of the fairness of the Proposed Transaction, the omission of the financial projections materially misleads those same stockholders as to the accuracy and value of the analyses.

*Material Omissions Regarding the Advisors' Financial Analyses*

28. The Proxy describes the fairness opinions of Barclays and Lazard and the various valuation analyses they performed in support of their opinions. However, the description of these analyses omits key inputs and assumptions underlying these analyses. Without this information, as described below, SuperValu's stockholders are being misled as to what weight, if any, to place on the fairness opinions in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to SuperValu's stockholders.

29. With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy fails to disclose the actual observed multiples Barclays utilized for each company in the analysis. The omission of these multiples renders the summary of the analysis and the implied values materially misleading, and makes the recitation an unfair summary of the analysis. A fair summary of the analyses requires the disclosure of the individual multiples; merely providing the range that a banker applied is insufficient, as SuperValu stockholders are unable to assess whether Barclays applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the Company's valuation.

30. Similarly, with respect to Barclays' *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the actual observed multiples Barclays utilized for each transaction in the analysis. The omission of these multiples renders the summary of the analysis and the implied values materially misleading, and makes the recitation an unfair summary of the analysis. A fair summary of the analyses requires the disclosure of the individual multiples; merely providing the range that a banker applied is insufficient, as SuperValu stockholders are unable to assess

whether Barclays applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the Company's valuation.

31. With respect to Lazard's *Selected Public Company Analysis*, the Proxy fails to disclose the actual observed multiples Lazard utilized for each company in the analysis. The omission of these multiples renders the summary of the analysis and the implied values materially misleading, and makes the recitation an unfair summary of the analysis. A fair summary of the analyses requires the disclosure of the individual multiples; merely providing the range that a banker applied is insufficient, as SuperValu stockholders are unable to assess whether Lazard applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the Company's valuation.

32. Similarly, with respect to Lazard's *Selected Precedent Transactions Multiple Analysis*, the Proxy fails to disclose the actual observed multiples Lazard utilized for each transaction in the analysis. The omission of these multiples renders the summary of the analysis and the implied values materially misleading, and makes the recitation an unfair summary of the analysis. A fair summary of the analyses requires the disclosure of the individual multiples; merely providing the range that a banker applied is insufficient, as SuperValu stockholders are unable to assess whether Lazard applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the Company's valuation.

*Material Omissions Regarding the Potential Conflicts Faced by Barclays and Lazard*

33. The Proxy also fails to disclose material information relating to the potential conflicts of interest faced by Barclays and Lazard in advising the Company.

34. The Proxy discloses that Lazard will receive fees for its services as a strategic advisor, as well as the fact that these fees are contingent on the success of the Proposed

9

Transaction. However the Proxy **entirely omits whether Lazard has been engaged by SuperValu within the past two years**, despite the fact that Defendant Savage is a senior advisor with Lazard.

35. Furthermore, while the Proxy discloses that Barclays was previously engaged by the Company to provide M&A advisory services and act as a lender within the past two years, the Proxy is silent as to the actual amount of fees paid beyond a cursory mention of "customary fees."

36. This omission is not only material on its own, but is also in clear violation of Item 1015 of SEC Regulation M-A, which requires disclosure of "any compensation received [in the past two years] or to be received as a result of the relationship . . . ." 17 C.F.R. § 229.1015.

37. These key omissions materially mislead SuperValu stockholders as to incentives affecting Barclays and Lazard. Without this information, SuperValu stockholders have received a materially misleading statement as to the objectivity and accuracy of the financial advisors' fairness opinions.

38. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Stockholder Vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein

39. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

### COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and SuperValu**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. SuperValu is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of SuperValu within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SuperValu and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 5, 2018  Respectfully submitted,

**O'KELLY ERNST & JOYCE, LLC**

By: /s/ *Ryan M. Ernst*
Ryan M. Ernst (No. 4788)
901 Market Street, Suite 1000
Wilmington, DE 19801
Tel: (302) 778-4000
Fax: (302) 295-2873
rernst@oelegal.com

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice)*
Elizabeth K. Tripodi (to be admitted *pro hac vice)*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
       etripodi@zlk.com

*Attorneys for Plaintiff*

*Attorneys for Plaintiff*